### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | |
|---|---|
| BENJAMIN GARBER, | |
| Plaintiff, | |
| v. | CAUSE NO.: 2:20-CV-119-TLS-JPK |
| FRANCISCAN ALLIANCE, INC., ANTHONY PINARSKI, CHRISTOPHER WITT, AMERICAN HERITAGE PROTECTIVE SERVICES, INC., and JOHN DOES 1–10, | |
| Defendants. | |

### OPINION AND ORDER

The Plaintiff Benjamin Garber sues Franciscan Alliance, Inc. ("Franciscan"), Anthony Pinarski, Christopher Witt, American Heritage Protective Services, Inc. ("AHPS"), and ten unknown Defendants. The Plaintiff instigated suit in state court after an incident at Franciscan's Dyer Hospital campus in which AHPS employee and off-duty police officer Defendant Pinarski arrested the Plaintiff. ECF No. 6. The Defendants removed the case to federal court on March 25, 2020. ECF No. 1. The Complaint states the following claims: false arrest (Count I); malicious prosecution (Count II); defamation per se (Count III); negligent infliction of emotional distress (Count IV); a violation of 42 U.S.C. § 1983 (Count V); intentional infliction of emotional distress (Count VI); battery (Count VII); wrongful interference with a business relationship (Count VIII); respondeat superior liability (Count IX); and negligence (Count X). Am. Compl. ¶¶ 44–91, ECF No. 7.

This matter is before the Court on Defendant Franciscan Alliance Inc. d/b/a Franciscan Health Dyer's Motion for Summary Judgment [ECF No. 50], filed July 1, 2022, and Defendants

Anthony Pinarski, Christopher Witt, and American Heritage Protective Services, Inc.'s Motion

for Summary Judgment [ECF No. 54], filed July 5, 2022. Both motions are fully briefed and ripe

for ruling. Because the Plaintiff has presented evidence to create a genuine dispute of material

fact as to several claims, including whether Defendant Pinarski arrested the Plaintiff with

probable cause, the Court denies in part and grants in part Defendants Anthony Pinarski,

Christopher Witt, and American Heritage Protective Services, Inc.'s Motion for Summary

Judgment [ECF No. 54]. Because the Plaintiff failed to present any genuine issues of material

fact as to all but one of the remaining claims against Defendant Franciscan, the Court grants the

Defendant Franciscan Alliance Inc. d/b/a Franciscan Health Dyer's Motion for Summary

Judgment in part and denies in part [ECF No. 50].

## JURISDICTION

"'[S]ubject-matter jurisdiction is the first issue in any case,' so [the Court] begin[s] with

[its] 'independent duty to ensure' that this case is properly in federal court." *Cothron v. White*

*Castle Sys., Inc.*, 20 F.4th 1156, 1160 (7th Cir. 2021), (quoting *Miller v. Sw. Airlines Co.*, 926

F.3d 898, 902 (7th Cir. 2019) and *Dexia Crédit Loc. v. Rogan*, 602 F.3d 879, 883 (7th Cir.

2010)). In removing the Plaintiff's cause of action from state to federal court, the Defendants

represented to the Court that jurisdiction was proper because the case presented a federal

question under 28 U.S.C. § 1331. Notice of Removal, ¶¶ 1–3, ECF No. 1. In describing his single

federal claim, the Plaintiff's Complaint provides as follows:

> 64.     At all times, Defendant Pinarski was acting under the color of state law.
> 65.     Defendants American Heritage, Franciscan and Witt acted under the color
> of state law as a willful participant in joint action with the State or its agents.
> Specifically, Defendant Franciscan and American heritage hired an instrument of
> the State's power. Defendant Pinarski was hired to serve Defendant Franciscan's
> and Defendant American Heritage's goal of providing security and deterring theft.
> 66.     Defendants violated—at a minimum—the following constitutional rights of
> Plaintiff: (1) his right to liberty and specifically personal safety, privacy, and

freedom from captivity; and, (2) his right to be secure in his person, papers, and effects against unreasonable searches and seizures under the Fourth Amendment.

67.   Defendants violated Plaintiff's established constitutional rights although there was no reasonable evidence or probable cause for doing so.

68.   Defendants wrongfully detained Plaintiff, depriving him of his freedom, freedom of movement, and subjecting him to an unlawful and unreasonable search and seizure.

Am. Compl. ¶¶ 64–68.

"Generally, a complaint alleging a federal claim that is insubstantial and frivolous does not trigger federal-question jurisdiction." *Belanger v. Wisconsin*, No. 18-C-00415, 2018 WL 4053394, at *3 n.1 (E.D. Wis. Aug. 24, 2018). The parties have not disputed that the Court has subject-matter jurisdiction, but both the allegations in the Amended Complaint and the Notice of Removal are bare enough to warrant the Court's independent review. *Miksis v. Evanston Twp. High Sch. Dist. # 202*, 235 F. Supp. 3d 960, 977–78 (N.D. Ill. 2017) ("Although the parties do not contest the Court's exercise of subject matter jurisdiction over Plaintiffs' claims, 'neither the parties nor their lawyers may stipulate to jurisdiction or waive arguments that the court lacks jurisdiction.'" (quoting *United States v. Tittjung*, 235 F.3d 330, 335 (7th Cir. 2000))); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (stating courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party" (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999))). "The district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993) (quoting *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir.1979)).

In this case, the Notice of Removal alleges federal question jurisdiction arises from the Plaintiff's claim under 42 U.S.C. § 1983. This Court must assess whether the Plaintiff "asserts a

'colorable' § 1983 claim against the defendants." *Stewart v. Waukegan Hous. Auth.*, No. 13 C 08444, 2015 WL 13900423, at *2 (N.D. Ill. July 13, 2015). A plaintiff raises a colorable claim under § 1983 only where the complaint alleges a defendant acting under color of state law violated a right arising under the Constitution or federal law. *Id.* (citing *West v. Atkins*, 487 U.S. 42, 48 (1988) and *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822 (7th Cir. 2009)). A private entity or individual does not act under the color of state law unless endowed with the powers of a state. *See DiDonato v. Panatera*, 24 F.4th 1156, 1159–60 (7th Cir. 2022) ("[I]t is 'firmly established' that a § 1983 defendant acts 'under color of state law when he abuses the position given to him by the State.'" (quoting *West*, 487 U.S. at 49–50)).

The Plaintiff does not bring suit against any state entity or municipality, such as the City of Dyer or the Dyer Police Department. The Court's jurisdiction consequently hinges on whether Defendant Pinarski performed an action which could be attributable to a governmental entity.[1]

A state action can sometimes lie where an off-duty state official engages in behavior of the same nature as their official state duties. *DiDonato*, 24 F.4th at 1160 ("Whether an individual is acting under color of state law 'turn[s] largely on the nature of the specific acts' the official performed, 'rather than on merely whether he was actively assigned at the moment' to the performance of his official duties" (quoting *Pickrel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir. 1995))); *see also Pickrel*, 45 F.3d at 1118 (holding an off-duty police officer dressed in his police uniform, complete with a badge and a gun, working as a security guard in a restaurant could have been acting under color of state law sufficient to find federal question jurisdiction

---

[1] Of relevance is the principle that "a private employer may not be held vicariously liable under 42 U.S.C. § 1983 for deprivation of others' civil rights caused by its employees." *Crenshaw v. Rivera*, No. 2:05-CV-440-PRC, 2009 WL 377985, at *10 (N.D. Ind. Feb. 12, 2009) (quoting *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir.1982)). "Rather, to successfully assert a claim, a plaintiff must first show that the private actor engaged in joint action with the State or its agents." *Id.*

when he arrested the plaintiff for refusing to leave); *cf. Latuszkin v. City of Chicago*, 250 F.3d 502, 503 (7th Cir. 2001) (finding that an off-duty, plain clothes officer who became intoxicated at a party in the police department's parking lot, drove his personal vehicle under the influence, and killed the plaintiff's spouse in an ensuing crash was not acting under color of state law); *cf. Woods v. Clay*, No. 01 C 6618, 2005 WL 43239, at *22 (N.D. Ill. Jan. 10, 2005) ("[T]he court finds that the Fifty Yard Line was acting under color of law by virtue of its employment of the police officers as part of its security force."); *Crenshaw*, 2009 WL 377985, at *12 (reviewing Indiana caselaw in deciding whether an off-duty police officer employed by a private entity as a security guard was acting as a private individual or as a police officer when making an arrest and, consequently, whether the officer's actions created tort liability for the private entity).

Reviewing the record, the Court makes the following observations for the purposes of ascertaining jurisdiction: Defendant Pinarski was a long-time Hammond police officer who moonlighted as a security guard for AHPS. After approaching the Plaintiff, Defendant Pinarski identified himself as a police officer and began questioning the Plaintiff as part of an investigation of the Plaintiff's suspected theft. Defendant Pinarski, while wearing his Hammond Police badge and carrying his service weapon, arrested the Plaintiff. The Court therefore finds the Plaintiff's § 1983 claim colorable for purposes of establishing federal question jurisdiction, and it proceeds to address the merits of the case.[2] *Stewart*, 2015 WL 13900423, at *2.[3]

---

[2] The Plaintiff's Amended Complaint further states, "Defendants American Heritage" and "Franciscan" both "acted under the color of state law as a willful participant in joint action with the State or its agents" by "hir[ing] an instrument of the State's power." Am. Compl. ¶ 65. Because the Court concludes the Plaintiff has a colorable claim that Defendant Pinarski was a state actor when he arrested the Plaintiff, the Court has no reason to further consider whether Defendant AHPS was likewise acting as an arm of the State in the events pleaded.

[3] The Plaintiff claims the Defendants infringed on his Constitutional rights to (1) "liberty and specifically personal safety, privacy, and freedom from captivity" and (2) to be secure in his person, papers, and effects under the Fourth Amendment's prohibition of unreasonable searches and seizures. Am. Compl. ¶ 66. The Court has jurisdiction over this claim under 28 U.S.C. § 1331 because it presents a federal

# BRIEFING DEFICIENCIES

Northern District of Indiana Local Rule 56-1(a) states,

**Moving Party's Obligations.** A party moving for summary judgment must separately file:
(1) a motion;
(2) a supporting brief;
(3) a Statement of Material Facts with numbered paragraphs for each material fact the moving party contends is undisputed which includes:
      (A) a short statement of each fact; and
      (B) a citation to evidence supporting each fact . . . .

Defendants Anthony Pinarski, Christopher Witt, and AHPS ("the Security Defendants") did not file a separate statement of undisputed material facts with numbered paragraphs for each material fact. Instead, they included their 'Statement of Undisputed Material Facts' in their brief in support of their motion and failed to separate out each material fact into numbered paragraphs. *See* ECF No. 55 at 5. The Plaintiff in response filed briefing that included a statement of material facts separated into numbered paragraphs but included only those material facts he believed were disputed and did not attempt to respond to the 'Statement of Undisputed Material Facts' in the Security Defendants' supporting brief. *See* ECF No. 62. In his Memorandum in Opposition to the Defendant's Motion for Summary Judgment [ECF No. 61], the Plaintiff included a second facts section, labeled 'Statement of Disputed Material Facts,' with a chronological account of the events leading to suit; this fact section contained citations to the record. ECF No. 61 at 6. In reply, the Security Defendants filed a document with numbered paragraphs specifically addressing the disputed material facts that the Plaintiff alleged in ECF No. 62. ECF No. 70.

---

question. The Plaintiff's state law claims "are so related to [the] claim[] in the action within [the Court's] original jurisdiction that they form part of the same case or controversy." *Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995) (quoting 28 U.S.C. § 1367). Consequently, the Court exercises supplemental jurisdiction over the Plaintiff's state law claims. 28 U.S.C. § 1367.

The Plaintiff's Response to Statement of Material Facts [ECF No. 62] states those disputed facts the Plaintiff believes material, and any other disputed facts the Plaintiff believes are material appeared in the Plaintiff's Response to Defendant Franciscan Alliance, Inc. d/b/a Franciscan Health Dyer's Statement of Material Facts [ECF No. 64]. The Plaintiff, therefore, does not dispute any other facts appearing in the "Statement of Undisputed Material Facts" in the Security Defendant's memorandum supporting its summary judgment motion. ECF No. 55.

Although the parties' filings do not fully comply with Local Rule 56-1, the Court nonetheless accepts the parties' materials and reaches the merits of both motions for summary judgment because it is not "impossible to tell . . . the proposed [facts] with which [the Plaintiff] disagrees." *Allen-Noll v. Madison Area Tech. Coll.*, 969 F.3d 343, 349 (7th Cir. 2020). However, the Court reminds the parties that the Local Rules are in place to ensure the speedy and efficient resolution of cases before the Court. In addition to being mandatory and in the best interests of the parties, compliance with these rules also ensures the Court does not take on responsibilities belonging to the parties. *See id.* ("This court has repeatedly recognized that district courts may require exact compliance with their local rules." (citing *Hinterberger v. City of Indianapolis*, 966 F.3d 523, 527–28 (7th Cir. July 15, 2020))); *see also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). The Court strongly discourages the parties from disregarding the Local Rules in the future.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant may discharge this burden by "either: (1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or

(2) presenting affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (citation omitted). In response, the non-movant "must make a sufficient showing on every element of his case on which he bears the burden of proof; if he fails to do so, there is no issue for trial." *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

In ruling on a motion for summary judgment, a court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* (citation omitted). A court's role "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted). Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Inadmissible evidence will not be considered by a court in evaluating a Motion for Summary Judgment." *Meridian Fin. Advisors, Ltd. v. Pence*, 763 F. Supp. 2d 1046, 1056 (S.D. Ind. 2011) (citing *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir.2003)).

## MATERIAL FACTS[4,5]

### A.  The Security Agreement, the Parties, and Other Background Information

Franciscan Contracted with AHPS to provide certain security services at multiple

Franciscan hospitals. Franciscan's Ex. A; Franciscan's Ex. C. AHPS security guards wore

AHPS-issued uniform as well as a Franciscan ID badge that identified the security guards as

independent contractors. Franciscan's Ex. G, 36:10–15.  Off-duty Hammond police officers wore

uniforms that identified them as police officers. Franciscan's Ex. F, 31:17–25; 32:1–2.

The Plaintiff was a medical device sales representative who traveled to different hospitals

working with surgeons, and he worked with surgeons at the Franciscan-Dyer campus before he

was arrested. Pl. Ex. A at ¶ 2, ¶ 15; Pl. Ex. B 67: 5–15.

The Sterile Processing Department ("SPD") is a secure area at each of the Franciscan

Hospitals in Dyer, Hammond, and Munster, Indiana, where surgical instruments are sterilized

and stored. Sec. Def.'s Ex. J, 7:2–9:1. Some of the instruments in the SPD are worth thousands

of dollars. Sec. Def.'s Ex. J, 61:7–8 Vendor representatives were required to wear visible

identification tags when at the Hospital. Sec. Def.'s Ex. M at 2. The Plaintiff was aware of this

policy. Sec. Def.'s Ex. N, ¶ 7. The Plaintiff did not remember obtaining or wearing a badge,

---

[4] The following facts originate from: the Defendants Anthony Pinarski, Christopher Witt, and American
Heritage Protective Services, Inc.'s Memorandum in Support of the Motion for Summary Judgment [ECF
No. 55]; the Plaintiff's Memorandum in Opposition to the Defendant's Motion for Summary Judgment
[ECF No. 61]; the Plaintiff's Response to Statement of Material Facts [ECF No. 62]; Defendants Anthony
Pinarski, Christopher Witt, and American Heritage Protective Services, Inc.'s Reply to Plaintiff's
Statement of Additional Material Facts [ECF No. 70]; Defendant Franciscan's Statement of Material
Facts Not in Dispute [ECF No. 52]; the Plaintiff's Response to Defendant Franciscan Alliance, Inc. d/b/a
Franciscan Health Dyer's Statement of Material Facts [ECF No. 64]; and Defendant Franciscan Alliance
Inc. D/B/A Franciscan Health Dyer's Response to Plaintiff's Statement of Additional Facts in Dispute
[ECF No. 67]. The Security Defendants' Exhibits A–N can be found at ECF No. 56-1 and citations are
denoted as "Sec. Def.'s." Defendant Franciscan's Exhibits A–M can be found at ECF No. 53-1 and
citations are denoted as "Franciscan's." The Plaintiff's Exhibits A–L can be found at both ECF Nos. 61-
1–12 and 65-1–12.

[5] The Court consolidates the material facts for both Defendants' motions for summary judgment because
all parties seek adjudication of largely the same material facts.

especially when just making quick trips to the SPD. Sec. Def.'s Ex. A, 75:12–21.  Upon arriving, the Plaintiff would typically knock on the SPD door and wait for someone to open it. Sec. Def.'s Ex. A, 51:1–8.

**B.  The Events Leading up to the March 11, 2018 Incident and the Plaintiff's Arrest**

On Sunday, February 11, 2018, Kathi Weems, an SPD employee on Franciscan's Hammond campus, reported that an unidentified man was traversing the Hammond SPD. Sec. Def.'s Ex. K. Weems did not recognize the unidentified man, and after he left, Weems noticed a tray of instruments missing. *Id*. She then contacted AHPS and told them the man may have taken a tray of instruments. *Id*. AHPS opened a file for "possible theft in SPD." *Id*. Weems found the instruments a short time later and let AHPS know they were not missing. *Id*.

AHPS Supervisor and Director of Hospital Security Roger Brooks nonetheless created a "be on the lookout" or BOLO report using a still photograph of a man matching Weems' description captured from a video recording of that day. *Id*. The BOLO stated "[t]his man is wanted regarding a possible SPD theft, Case # 6004" and instructed that, if seen, the man should be stopped, identified, and interviewed. *Id*. The incident report created after this event included Weems' report and reflected that nothing was known to be missing. *Id*. The incident report also reflected that Weems believed the man had taken something. *Id*. ("The one tray I thought was missing is no[t] but I am not sure what he took. I need to look more."). On February 15, 2018, the SPD manager reported that "nothing is missing." *Id*.

Two weeks later, on Sunday, February 25, 2018, an SPD employee on Franciscan's Dyer campus named Cathy reported a "suspicious person" to security. Sec. Def.'s Ex. L. Cathy claimed the man identified himself as "Dan" and stated he worked for DePuy, another medical devices sales firm. *Id*. Cathy reported that, upon entering the building, the man asked to use the

phone and was left unattended. *Id*. Cathy attempted to locate the man and noticed that the door

from the SPD to the Lab, an area the man "was not supposed to be in," was closing. *Id*. Upon

reviewing the security footage, AHPS concluded the man matched the physical profile of the

suspect from the February 11, 2018 incident in Hammond. *Id*. AHPS employees showed a

picture of the suspect to a DePuy representative who recognized the suspect as the Plaintiff and

stated the Plaintiff was a former DePuy employee whom the representative believed was

working for a different company. *Id*.; Sec. Def.'s Ex. D, 41:1–5. The incident report for this

event reflected that no items were confirmed missing from the SPD. Sec. Def.'s Ex. L; Pl. Ex. D,

66:20–24.[6] AHPS employee Roger Brooks distributed the BOLO to "the security points," AHPS

employees, and the front entrance desk of Franciscan Health. Fr. Ex. E, 26:2–27:2.

## C.  The March 11, 2018 Incident and the Plaintiff's Arrest

As vendor representatives entered the hospital, AHPS security guard and Co-Defendant

Christopher Witt checked their badges. Sec. Def.'s Ex. C, 29:2–19; Sec. Def.'s Ex. G at 14. If

---

[6] The Plaintiff admits the two incident reports had been created following these two events but denies that
the Plaintiff's actions were "suspicious" and argues that Franciscan "knew nothing had been stolen." ECF
No. 64 ¶ 16. Because the Plaintiff does not dispute the factual accuracy of the reports, the Court finds the
substance of the reports are not in dispute. As to the Plaintiff's contention that Franciscan knew that
nothing had been stolen, while the Court is obligated to draw conclusions in the light most favorable to
the Plaintiff, the Court finds it cannot adopt this conclusion because the Plaintiff, in effect, asks the Court
to assume the Defendants' state of mind. Such an inference goes beyond the reasonable conclusions that
could arise from such facts. *See Yeatts*, 940 F.3d at 358 (A court may only draw reasonable inferences in
favor of the nonmoving party).

vendor representatives entered the hospital without a badge, Defendant Witt would stop them to ask for identifying information and to see where they were headed. *Id.*

On Sunday, March 11, 2018, Defendant Witt was stationed at the front entrance of Franciscan's Dyer Hospital campus. *Id.* 46:14–15. Defendant Witt wore an American Heritage uniform that included an American Heritage insignia on the front. ECF No. 64 ¶ 20.

Defendant Witt recognized the Plaintiff from the BOLO as the Plaintiff prepared to enter the hospital. Sec. Def.'s Ex. C, 46:14–25; 48:3–11. Defendant Witt knew nothing about the Plaintiff, other than the information in the BOLO, and hoped to identify him. *Id.* 57:11–12, 72: 23–25. Witt told AHPS security guards over radio that he believed the person from the BOLO was in front of him. *Id.* 46:22–25.

The Plaintiff entered the hospital wearing blue scrubs and a hairnet and carrying a bin or a tote. Sec. Def.'s Ex. B 36:4–5; Sec. Def.'s Ex. A, 104:11–14. The Plaintiff stopped at the main entrance and requested to enter the SPD. Sec. Def.'s Ex. A 101:16–102:13; Sec. Def.'s Ex. C, 47:15–24. The Plaintiff stopped by the front desk to make sure someone knew why he was there because the Dyer hospital did not have a place for sales representatives to sign in at the entrance level. Pl. Ex. B 99:18–101:24. The Plaintiff told the female Franciscan employee also stationed at the front desk that he was with Hologic and needed to retrieve his company's Myosure hysteroscope from the SPD. Pl. Ex. B 98:16–99:17. The Plaintiff was not wearing any identification on his person. Sec. Def. Ex. F. The parties dispute whether the female employee and Defendant Witt asked the Plaintiff to provide identification when he entered the hospital.

The parties also dispute what happened next; the Court, therefore, views the facts in the light most favorable to the Plaintiff. *See Williams v. Brooks*, 809 F.3d 936, 941 (7th Cir. 2016) (construing the facts, for purposes of summary judgment, in the light most favorable to the

nonmoving party) (citing *Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir.2012)). Without saying a word, Defendant Witt motioned for the Plaintiff to follow Witt down the hallway. Pl. Ex. B at 103:2–10. Defendant Witt escorted the Plaintiff to the SPD, asked him to wait outside the door of the SPD, and walked away. Franciscan's Ex. H, 103:2–19; Sec. Def. Ex. C 52:2–4, 20–22; Pl. Ex. B 103:2–16.

Witt approached and spoke with Defendant Pinarski. Pl. Ex. B 103:17–104:10, 108:15–25. Pinarski was a police officer with the City of Hammond, Indiana Police Department, and worked off-duty as an employee of AHPS. Franciscan's Ex. F. 6:2–8, 11:3–18, 15:9–10; Franciscan's Ex. I Nos. 3.3, 3.4. Defendant Pinarski had seen the BOLO and recognized the Plaintiff from his picture on it. Sec. Def.'s Ex. B, 7:12–16.

Defendant Witt, accompanied by Defendant Pinarski, returned to where Plaintiff stood. Franciscan's Ex. H, 104:25–105:6; Franciscan's Ex. G, 50:13–19. Defendant Pinarski was wearing a blue polo shirt and a Hammond Police badge around his neck. Sec. Def.'s Ex. B, 21:22–25; Sec. Def.'s Ex. H ¶ 25; Fr's Ex. F, 21:22–25.

Pinarski said to the Plaintiff, "[W]e just don't allow anybody in this door." Pl. Ex. B, 109:4–19. The Plaintiff responded that he was a sales representative for Hologic and that he was there to pick up a surgical instrument. *Id.*

More security guards and some hospital staff arrived and surrounded the Plaintiff. *Id.* at 109:21–25; Franciscan's Ex. D at 7. They asked, "Who are you working with?" and "[h]ow does this work?" Pl. Ex. B at 116:8–19. Pinarski then ordered the Plaintiff up against the wall, performed a pat search on the Plaintiff, and handcuffed him. Sec. Def.'s Ex. B, 35:2–8, 12–14; Franciscan's Ex. I, No. 3.9; Franciscan's Ex. J; Pl. Ex. B, 109:20–111:24. The Plaintiff could not recall whether any other AHPS security officers touched him during the arrest, other than

Pinarski. Sec. Def.'s Ex. A, 128:5–11. AHPS contacted the Dyer Police. Sec. Def.'s Ex. B, 37:6–23; Franciscan's Ex H, 111:17–18; Franciscan's Ex. F, 37:6-23. Once officers from the Dyer Police department arrived, they took custody of the Plaintiff, took him outside for questioning, and arrested him. Sec. Def.'s Ex. F. The Dyer Police spoke to security about the events. Franciscan's Ex. H, 129:6–14, 131:3–6.

The parties agree that, at this point, Witt told the Dyer Police that Witt had advised the Plaintiff that the Plaintiff was not allowed on hospital property and the Plaintiff refused to leave. *See* Sec. Def.'s Ex. F; Pl. Ex. E at 3. It appears Defendant Witt did not actually tell the Plaintiff to leave before he was arrested.[7]

The Security Defendants later stated two bases of probable cause could have supported Defendant Pinarski's arrest: the "possible SPD theft" described in the BOLO; or the Plaintiff's failure to identify himself to a police officer. Franciscan's Ex. I, No. 3.6, 3.8, 3.9; Pl. Ex. F, 6:9–7:4. Brooks placed the Plaintiff on a no-trespass list. Franciscan's Ex. E, 74:21–75:2.

After the Plaintiff's arrest, a Dyer Police officer investigated the incident; at the Dyer Police Department, the officer had a meeting with AHPS employee Roger Brooks and Franciscan employee Sherry Gerdes, among others. Pl. Ex. L at 58:17–59:21. The officer created and circulated a flyer with the Plaintiff's face and description. Sec. Def.'s Ex. E, 16:19–25, 17:3–7. The Plaintiff was charged with criminal trespass. Pl. Ex. E at 2.

---

[7] The Dyer Police Information and Probable Cause Affidavit provides the Plaintiff "did knowingly or intentionally refuse to leave the real property of Franciscan Health Dyer . . . after having been asked to leave by security guard Christopher Witt." Pl. Ex. E at 2. The Dyer Police Department report for the incident states Defendant "Witt stated that he advised [the Plaintiff] that he was not allowed on the property . . . . [Defendant] Witt stated that [the Plaintiff] was not leaving . . . ." Sec. Def.'s Ex. F. However, when deposed later, Defendants Witt and Pinarski stated neither of them actually told the Plaintiff to leave the premises before Defendant Pinarski arrested him. Pl. Ex. F, 9:17–22; Pl. Ex. G, 73:12–18; Pl. Ex. D at 75:10–18. AHPS employee Roger Brooks likewise stated no one asked the Plaintiff to leave before he was arrested. Pl. Ex. D, 75:10–18.

**D.  The Termination of the Plaintiff's Employment and Other Post-Arrest Events**

Following his arrest, the Plaintiff's manager at Hologic questioned him about the incident and the Plaintiff stated Dyer hospital was upset that he failed to sign in and was being hard on vendor representatives; he did not reveal his arrest. Sec. Def.'s Ex. G, 20:23–21:5; Sec. Def.'s Ex. A 151:11–152: 9, 153:18–24. The Plaintiff later told Erica Wines, his human resource manager, that he had been arrested. Sec. Def.'s Ex. A, 152:23–25. At some point, Tom Murtaugh, a lieutenant at AHPS (but not a police officer), communicated directly with the Plaintiff's manager at Hologic to discuss the incident. Pl. Ex. J. Murtaugh told the Plaintiff's manager that the Plaintiff "came in last Sunday and took out Hospital property (they are still looking into if was his or the hospitals." Pl. Ex. I.

Hologic determined the Plaintiff violated its applicable code of conduct and failed to follow a policy requiring sales representatives to identify themselves to vendors such as Dyer Hospital, and it terminated the Plaintiff. Sec. Def.'s Ex. I at 2; Sec. Def.'s Ex. G, 17:14–17, 32:1–12.

The Plaintiff has not been applying for jobs as a medical sales representative since July of 2020 because he believes his reputation "has been devastated and destroyed in a lot of areas." Sec. Def.'s Ex. A, 166:19–22, 176:4–15.

## ANALYSIS

**A.  The Security Defendants' Motion for Summary Judgment**

As discussed below, if Defendant Pinarski arrested the Plaintiff with probable cause, the Plaintiff has no right to recover on the single federal claim—the legal claim arising under 42 U.S.C. § 1983. The Court, therefore, first turns to the second-filed motion for summary judgment

of the Security Defendants. Any liability attributable to Defendant Pinarski and Defendant Witt is attributable to AHPS. Sec. Def.'s Mem. at 5, ECF No. 55.

*1. Fourth Amendment Violations Under § 1983*

To succeed on a claim arising under § 1983, a plaintiff must demonstrate that a person acting under the color of state law violated rights secured by the Constitution or laws of the United States. *Barnes v. City of Centralia*, 943 F.3d 826, 830–31 (7th Cir. 2019) (citations omitted). The Plaintiff's § 1983 claim arises under the Fourth Amendment to the Constitution of the United States and stems from Defendant Pinarski's warrantless arrest. The Plaintiff's Complaint alleges that Defendant Pinarski, an off-duty police officer working as a security guard for AHPS, was acting under the color of state law and violated the Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures because he arrested the Plaintiff without probable cause.[8] Am. Compl. ¶¶ 64, 66, 68.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. As the Supreme Court has "repeatedly recognized, 'the arrest of a person is quintessentially a seizure'" under the Fourth Amendment. *Torres v. Madrid*, 141 S. Ct. 989, 996 (2021) (quoting *Payton v. New York*, 445 U.S. 573, 585 (1980)). "[A] warrantless arrest made in public must be supported by probable cause," or it is unreasonable. *Gutierrez v. Kermon*, 722 F.3d 1003, 1007 (7th Cir. 2013) (citing *United States v. Watson*, 423 U.S. 411, 414–24 (1976)); *see also Hayes v. Florida*, 470 U.S. 811, 816 (1985) (reaffirming the rule that "arrests may constitutionally be made only on probable cause").

---

[8] The parties do not litigate on summary judgment whether Defendant Pinarski's arrest constituted an act of the State, and the Court does not examine this issue any more than is necessary to resolve the jurisdictional questions answered above.

The probable cause inquiry depends on the totality of the circumstances known to the arresting officer at the time of arrest. *Gutierrez* at 1007–08. Probable cause exists where a reasonable person in the officer's position would have believed the "arrestee had committed, was committing, or was about to commit a crime." *Id.* at 1008 (quoting *Abbott v. Sangamon County*, 705 F.3d 706, 714 (7th Cir.2013)). The officer's belief must be based in "reasonably trustworthy information." *Gower v. Vercler*, 377 F.3d 661, 668 (7th Cir. 2004) (quoting *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999)). "[A]lthough [probable cause] requires something more than a hunch," it need not be "more likely than not that the arrestee was engaged in criminal activity— the officer's belief that the arrestee was committing a crime need only be reasonable." *Abbott* 705 F.3d at 714; *see also. Holmes v. Village of Hoffman Ests.*, 511 F.3d 673, 679 (7th Cir. 2007) ("Probable cause requires more than a bare suspicion of criminal activity, but it does not require evidence sufficient to support a conviction."). An arrest is constitutional if it is made with probable cause for any offense, regardless of whether the officer's stated basis was different. *Muhammad v. Pearson*, 900 F.3d 898, 908 (7th Cir. 2018) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).

"Although the issue of probable cause. . . generally is a jury question, the court may conclude that probable cause existed as a matter of law 'when there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them.'" *Tibbett v. McPherson*, 5 F. Supp. 3d 989, 993 (S.D. Ind. 2014) (quoting *Sheik–Abdi v. McClellan*, 37 F.3d 1240, 1247 (7th Cir.1994)). In other words, "[p]robable cause can be found as a matter of law . . . when the facts permit but one conclusion[:] . . . when no reasonable jury could find that the officer[] did not have probable cause' to make an arrest." *Jones by Jones v. Webb*, 45 F.3d 178, 182 (7th Cir. 1995) (quoting *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993)).

A court may find probable cause even if some facts are disputed as long as the finding of probable cause can survive the court's adoption of the plaintiff's version of the disputed facts. *Stobinske-Sawyer v. Village of Alsip*, 188 F. Supp. 2d 915, 920 (N.D. Ill. 2002) (quoting *Cervantes v. Jones*, 188 F.3d 805, 811 (7th Cir. 1999)).

Whether probable cause exists hinges on the elements of the predicate state law criminal offense. *Abbott*, 705 F.3d at 715. And an arrest is not constitutional unless probable cause is established as to each element of an offense. *Spiegel*, 196 F.3d at 725.

The three bases in the record the Security Defendants advanced to support Defendant Pinarski's arrest were the Plaintiff's failure to identify himself to a police officer, the possible theft from the SPD, and trespassing.

While the Defendants assert the Plaintiff refused to identify himself when asked, the Plaintiff's version of events does not support this conclusion, and, therefore, probable cause for arrest did not exist on this basis. After Defendant Witt led the Plaintiff to Defendant Pinarski in front of the SPD, Defendant Pinarski told the Plaintiff, "[W]e just don't allow anybody in this door." Pl. Ex. B, 109:4–19. The Plaintiff responded that he was a sales representative for Hologic and that he was there to pick up a surgical instrument. *Id.* But Defendant Pinarski did not specifically ask for the Plaintiff's identification, and the Plaintiff did not specifically refuse.[9] Because, under the Plaintiff's version of events, a reasonable jury could conclude the Plaintiff

---

[9] The Plaintiff does not contest the Security Defendants' argument that he violated hospital policy when he entered the hospital without wearing a visible badge. However, this fact alone does not show a refusal to identify and could not have provided Defendant Pinarski with probable case, especially given that, on the Plaintiff's version of the facts, Defendant Pinarski did not ask for a name, a badge, or any other identification.

did not refuse to identify himself, this exchange did not give Defendant Pinarski probable cause to arrest for a failure to identify.[10]

Similarly, though the Plaintiff was ultimately arrested for trespassing, the record does not show that Defendants Witt, Pinarski, or any other AHPS employee asked the Plaintiff to leave prior to his arrest, and neither do those three Defendants appear to argue anyone else did. A person who does not have "a contractual interest in the property [and] knowingly or intentionally refuses to leave the real property of another person after having been asked to leave by the other person or that person's agent" commits criminal trespass. Ind. Code § 35-43-2-2(b)(2). Because there is no evidence that the Plaintiff was ever asked to leave, criminal trespass cannot serve as a basis for probable cause on summary judgment.

The question this Court must answer, then, is whether a reasonable jury could find Defendant Pinarski had probable cause to arrest the Plaintiff for suspected past or imminent theft. *Maxwell*, 998 F.2d at 434; *Abbott*, 705 F.3d at 714–15. The probable cause inquiry focuses on arresting officer Defendant Pinarski's objective perspective at the time he made the arrest. Any legal finding of probable cause for summary judgment must, therefore, be supported

---

[10] Indiana Code § 34-28-5-3.5 states, "A person who knowingly or intentionally refuses to provide either the person's: (1) name, address, and date of birth; or (2) driver's license, if in the person's possession; to a law enforcement officer who has stopped the person for an infraction or ordinance violation commits a Class C misdemeanor." Without pointing to any such limiting language or advancing any supporting caselaw, the Plaintiff asserts this section is limited to traffic stops. At least one Indiana state court has applied this provision against a defendant not in possession or control of any motor vehicle. *Miller v. State*, 51 N.E.3d 313, 315 (Ind. Ct. App. 2016). The arresting officer offered § 34-28-5-3.5 as a basis for his arrest of a defendant who was accused of causing a disturbance at a convenience store and walking away on foot. *Id.* at 314. The court did not rebuff the State's argument by holding that provision does not apply outside of traffic stops; instead, the court held that provision did not apply because the defendant had never failed to identify herself to the officer. *Id.* at 315. In another case, in federal court, a police officer observed a defendant violating Indiana law by walking down the middle of the street, stopped the defendant, and asked the defendant to identify himself. *United States v. Coleman*, No. 1:15-CR-00064, 2015 WL 5918025, at *4–5 (S.D. Ind. Oct. 9, 2015). The federal court found probable cause existed to allow a police officer to arrest the man after he failed to properly identify himself. *Id.* at *6. While it is unclear what infraction or ordinance violation Defendant Pinarski may have believed the Plaintiff had committed, the Plaintiff does not contest failure to identify on this basis.

entirely by the following undisputed facts known to Defendant Pinarski at the time. First, the

parties agree Defendant Pinarski recognized the Plaintiff from the BOLO and knew of its

contents. The BOLO stated very little. It contained a date of issuance, February 12, 2018. It also

indicated that a white, blonde man was "wanted for questioning regarding a possible SPD theft,

Case #6004. If seen he should be identified, and stopped. He should be interviewed regarding

this case. Roger Brooks should be contacted ASAP." Sec. Def.'s Ex. K. And it contained a

photograph of the Plaintiff in which he was walking through Franciscan's Hammond hospital

wearing blue scrubs and a hairnet and carrying a bin. Defendant Pinarski would have also

considered that the Plaintiff was again showing up without identification to a different

Franciscan hospital requesting access to the SPD, a secure location holding several highly

expensive medical instruments, again dressed in blue scrubs and a hairnet, and again carrying

something he could presumably use to transport instruments.

Equally crucial, however, is the information the BOLO did not contain that the parties

fail to show Defendant Pinarski knew at the time he arrested the Plaintiff. For example, the

parties do not discuss whether the record indicates Defendant Pinarski was familiar with the two

incident reports containing all the known information on the February 11, 2018 and February 25,

2018 incidents. Those reports included the following facts: the SPD had checked back after both

incidents and later informed Roger Brooks that nothing was reported missing; that a DePuy

medical device sales representative had stated the Plaintiff's name may be Ben Garber and that

the Plaintiff may have formerly worked as a medical device salesman for DePuy and was now

working for a different company. In fact, the parties fail to point to evidence showing that

Defendant Pinarski even knew of the February 25, 2018 incident.[11] Both parties agree that after

---

[11] The Security Defendants provide no information about the extent of Defendant Pinarski's knowledge of
the events preceding the arrest, other than asserting Sergeant Pinarski recognized the Plaintiff from the

Defendant Witt walked the Plaintiff to the SPD and told him to wait outside, Defendant Witt went to retrieve Defendant Pinarski and spoke with him. The parties do not, however, state what was said or how this might have impacted Defendant Pinarski's conclusion that he had probable cause to make an arrest. And, again, Defendant Witt knew only what the BOLO stated.

The Court cannot say with certainty that, on the above facts, no reasonable jury could find that Defendant Pinarski lacked probable cause to make the arrest. Considering the Plaintiff's version of events, in which Defendant Pinarski asked no questions before making the arrest, the Court finds it must send the Plaintiff's § 1983 claim as to the Security Defendants to a jury.[12]

*2. False Arrest & Malicious Prosecution*

The Security Defendants also oppose the Plaintiff's Indiana state law false arrest and malicious prosecution claims by arguing there was probable cause for his arrest. As discussed above, the Plaintiff has demonstrated a genuine question of material fact on the matter, and the Court therefore denies the Security Defendants' motion for summary judgment as to the state law false arrest, false imprisonment, and malicious prosecution claims as to Defendants Witt,

---

BOLO. Sec. Def.'s Mem. at 7, ECF No. 55; Sec. Def.'s Ex. B, 21:5–16. Neither does the Plaintiff provide information on this matter in responding to the Security Defendants' motion. In defending its motion for summary judgment, Defendant Franciscan's Statement of Material Facts Not in Dispute alleges that "Brooks also informed the [AHPS] security team of suspected thefts and placed the BOLO in the security office and at the front entrance desk of Franciscan Health." *See* ECF No. 51 ¶ 18. To support this statement, Defendant Franciscan cites its Exhibit E, Roger Brooks' deposition. *Id.* That deposition does not actually indicate that Brooks informed the AHPS security team of the incidents on February 11 and 25, 2018, other than circulating the BOLO relevant to the February 11, 2018 incident. *See* Franciscan's Ex. E, 26:25–27:2. The inference that Defendant Pinarski knew of the two incidents preceding the Plaintiff's arrest is "'supported by only speculation or conjecture.'" *Brooks*, 809 F.3d at 941 (quoting *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008)). Nowhere else does any party suggest that Defendant Pinarski saw the incident report referenced in the BOLO or the report created after the February 25, 2028 incident. Whether the record actually contains such evidence is immaterial. "It simply is not the court's job to sift through the record to determine whether there is sufficient evidence to support a party's claim." *Hoosier v. Greenwood Hosp. Mgmt. LLC*, 32 F. Supp. 3d 966, 972 (N.D. Ill. 2014).

[12] The Security Defendants did not present argument in their motion on whether Defendants Witt and AHPS acted as arms of the state under the color of law in collaboration with Defendant Pinarski in arresting the Plaintiff and the Court, therefore, denies summary judgment on this claim as to all three Security Defendants.

Pinarski, and AHPS.[13] *Row v. Holt*, 864 N.E.2d 1011, 1016 (Ind. 2007) ("A false arrest requires absence of probable cause.") (citation omitted); *Hall v. Shaw*, 147 N.E.3d 394, 402 (Ind. Ct. App. 2020) ("To establish a case for malicious prosecution, 'the plaintiff must prove (1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor.'" (quoting *Donovan v. Hoosier Park, LLC*, 84 N.E.3d 1198, 1209 (Ind. Ct. App. 2017))).

*3. Defamation Per Se*

The Complaint states "[the] Defendants" communicated to a person other than the Plaintiff "that [the] Plaintiff was trespassing and had stolen medical equipment." Am. Compl. ¶ 53. The facts coloring this claim were not identified and the only plausibly relevant facts are vague. They are as follows: "Defendants contacted [the Plaintiff's] employer (Hologic) and claimed that [the Plaintiff] had been stealing Depuy [sic] medical equipment from the hospital and selling it on 'the black market.'" *Id.* ¶ 38.

Indiana courts define defamation as a statement that "injure[s] reputation or . . .diminish[es] esteem, respect, good will, or confidence in the plaintiff, or . . . excite[s] derogatory feelings or opinions about the plaintiff." *Ali v. All. Home Health Care, LLC*, 53 N.E.3d 420, 428 (Ind. Ct. App. 2016) (quotation marks and citation omitted). A claimant cannot recover for defamation unless the claimant shows the statement is both false and defamatory. *Id.*

"To establish a claim of defamation, a plaintiff must prove the existence of a communication with defamatory imputation, malice, publication, and damages." *Dugan v. Mittal Steel USA Inc.*, 929 N.E.2d 184, 186 (Ind. 2010) (quotation marks and citation omitted); *see also Kelley v.*

---

[13] The Court construes the false arrest claim against Defendant Witt as a false imprisonment claim. *See infra*, Analysis, ¶ B.1.a.

*Tanoos*, 865 N.E.2d 593, 597 (Ind. 2007). "[D]efamation *per se* . . . arises when the language of

a statement, without reference to extrinsic evidence, constitutes an imputation of (1) criminal

conduct, (2) a loathsome disease, (3) misconduct in a person's trade, profession, office, or

occupation, or (4) sexual misconduct." *Dugan*, 929 N.E.2d at 186. In an action for defamation

per se, damages are presumed as a "natural and probable consequence" of the defamatory

statement. *Tanoos*, 865 N.E.2d at 597.

The Plaintiff argues Defendants Witt and Pinarski defamed him because they falsely told

the Dyer Police that the Plaintiff refused to leave despite being asked to do so. The allegedly

defamatory statement referenced in the Complaint concerns an allegation that the Plaintiff

trespassed and stole medical equipment while at a hospital, which, at the very least, would

implicate criminal conduct.

Taking all reasonable inferences in favor of the Plaintiff, the Court finds that the Plaintiff

has established a prima facie claim of defamation per se against Defendants Witt and Pinarski.

The Security Defendants' argument that neither AHPS employee gave the Dyer Police any false

information appears inconsistent with the Dyer Police Report, the Dyer Police Information and

the Probable Cause Affidavit, and Defendant Witt's, Pinarski's, and Roger Brooks' deposition

testimony stating no one told the Plaintiff to leave before he was arrested for trespassing.

Citing only his Exhibit E, the Dyer Police Information and Probable Cause Affidavit, the

Plaintiff argues the evidence shows Defendant Pinarski told the Dyer police that he asked the

Plaintiff to leave. Resp. at 23, ECF No. 61. Both documents in Exhibit E indicate that the

information they contain was premised on the observations of two witnesses, Defendants Witt

and Pinarski, and both documents demonstrate the arresting Dyer Police officer concluded from

those observations that he had probable cause to arrest the Plaintiff for trespassing. Pl. Ex. E.

Though it is unclear whether Defendant Pinarski also told the Dyer Police that Defendant Witt asked the Plaintiff to leave and the Plaintiff refused, the Dyer Police Report states that the reporting officer spoke with Defendant Pinarski in creating an account of the event. Sec. Def.'s Ex. F. The Police Report and the Dyer Police Information and Probable Cause Affidavit create a reasonable inference that Defendant Pinarski told the Dyer Police that Defendant Witt told the Plaintiff to leave and he refused.

The Plaintiff and the Security Defendants seem to agree that Defendant Witt told the Dyer Police that he advised the Plaintiff that the Plaintiff was not allowed on the premises and the Plaintiff nevertheless refused to leave. *See* Sec. Def.'s Reply Count III.1.2, ECF No. 70; Resp. at 23, ECF No. 61; *see also* Pl. Ex. E; *see also* Sec. Def.'s Ex. F. The Dyer Police report explicitly states Defendant Witt advised the Dyer Police that he told the Plaintiff he was not welcome on hospital property and the Plaintiff was not leaving. Sec. Def.'s Ex. F; Pl. Ex. E. In their depositions, however, Defendants Pinarski and Witt and AHPS employee Roger Brooks state no one asked the Plaintiff to leave before he was arrested. Pl. Ex. F, 9:17–22; Pl. Ex. G, 73:12–18; Pl. Ex. D at 75:10–18; Pl. Ex. D, 75:10–18. Damages are presumed. *Tanoos*, 865 N.E.2d at 597. Whether Defendants Witt and Pinarski acted with malice is a jury question. *Williams v. Tharp*, 914 N.E.2d 756, 766 (Ind. 2009) (noting "a defendant's state of mind is ordinarily a question for the jury" (citing *Best Homes, Inc. v. Rainwater*, 714 N.E.2d 702, 707 (Ind. Ct. App. 1999))).

For these reasons, the Court denies summary judgment as to the Plaintiff's defamation per se claim against the Security Defendants.

*4. Wrongful Interference with a Business Relationship*

The Plaintiff avers the Security Defendants interfered with his business relationship with Hologic when AHPS employee Tom Murtaugh communicated directly with the Plaintiff's manager at Hologic stating the Plaintiff "came in last Sunday and took out hospital property (they are still looking into if was his or the hospitals)." Pl. Ex. I at 4.

The elements of an intentional interference with a business relationship are: "(1) the existence of a valid relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional interference with that relationship; (4) the absence of justification; and (5) damages resulting from defendant's wrongful interference with the relationship." *Levee v. Beeching*, 729 N.E.2d 215, 222 (Ind. Ct. App. 2000). *Levee*, the case the Plaintiff cites as support in his response, further states, "illegal conduct is an essential element of tortious interference with a business relationship." *Id.* In responding to the Security Defendants' motion for summary judgment, the Plaintiff points to no facts suggesting the Defendant's conduct was illegal. Because the Plaintiff fails to assert evidence to support an element of his claim, the Court enters summary judgment against the Plaintiff on his claim of wrongful interference with a business relationship against the Security Defendants.

*5. Intentional Infliction of Emotional Distress*

The elements of intentional infliction of emotional distress ("IIED") are satisfied where a plaintiff shows a defendant "(1) engages in extreme and outrageous conduct (2) which intentionally or recklessly (3) causes (4) severe emotional distress to another." *Bah v. Mac's Convenience Stores, LLC*, 37 N.E.3d 539, 549 (Ind. Ct. App. 2015) (quotation marks and citation omitted). The Complaint's description of the Plaintiff's IIED claim is extremely vague: "By their extreme and outrageous conduct, Defendants intentionally or recklessly caused severe emotional

25

distress to Plaintiff." Am. Compl. ¶ 71. In his Response, the Plaintiff contends the Defendants

acted outrageously and intentionally caused him emotional distress because "[AHPS] knew

nothing had been stolen but continued to pursue [the Plaintiff] for theft anyway." Resp. at 26,

ECF No. 61. The Plaintiff provides no other argument, citation to the record, legal citation, or

explanation of the IIED claim against the Security Defendants.

The facts show the Security Defendants' suspicions were justified and lead the Court to

conclude that their continued pursuit of the Plaintiff was not extreme or outrageous. AHPS

employee Roger Brooks knew the Plaintiff had twice before requested access to a secure

department containing expensive medical equipment. *See* Sec. Def.'s Ex. K (indicating Brooks

"reviewed" both AHPS Incident Reports and investigated the February 11, 2018 and February

25, 2018 events). Two Franciscan employees in different locations on different dates felt the

Plaintiff was suspicious and suspected he had stolen expensive surgical instruments. Though

employees at both locations reported they later found misplaced instruments and that they found

nothing to be missing—the Plaintiff does not explain why it was unreasonable for AHPS to want

to investigate the Plaintiff. The Plaintiff does not appear to oppose the Defendants' assertion that,

regarding the February 25, 2018 incident, a Franciscan employee reported to Defendant AHPS

that the Plaintiff identified himself as 'Dan' and stated he worked for a medical device sales

company—DePuy—with which he was no longer employed. Neither does the Plaintiff dispute

that a DePuy employee identified him when AHPS contacted them and showed the photograph

from the BOLO. These facts justify Defendant AHPS's suspicions and preclude a finding that

their continued pursuit of the Plaintiff was extreme and outrageous.

It is unclear with which actions the Plaintiff takes issue with regard to Defendant Witt.

The undisputed facts demonstrate that Defendant Witt knew of the Plaintiff only through those

facts stated in the BOLO. Assuming the Plaintiff's version of events is true, Defendant Witt did not engage in extreme and outrageous conduct by collecting the Plaintiff at the front desk of the hospital, silently leading the Plaintiff to the SPD to be questioned by Defendant Pinarski, standing by while the Plaintiff was arrested, and asking, "[w]ho are you working for" and "[h]ow does this work." As a matter of law, Defendant Witt did not act outrageously in "pursuing" the Plaintiff for theft.

The Court grants summary judgment in favor of Defendant Witt on the Plaintiff's IIED claim. Because Defendant Pinarski's conduct in arresting the Plaintiff—the only conduct that could reasonably support this claim—is in dispute, and because its reasonableness is ultimately tied to whether his arrest was made with probable cause and was lawful, the Court denies the Security Defendants' motion as to the IIED claim against Defendant Pinarski. Because AHPS is liable for Defendant Pinarski's conduct, the Court must also deny the motion as to AHPS.

*6. Negligent Infliction of Emotional Distress & Negligence*

The Plaintiff's negligent infliction of emotional distress ("NIED") claim is also vague: "Defendants were negligent"; the "Plaintiff was directly involved in an incident related to Defendants' negligence even if [the] Plaintiff was not physically injured"; the "Plaintiff suffered serious emotional distress of the type that a reasonable person would expect to occur"; and the Defendants' negligence caused the Plaintiff's emotional distress. Am. Compl. ¶¶ 59–62. The Plaintiff's negligence claim fares no better: the "Defendants owed [the] Plaintiff a duty in carrying out their security activities"; the "Defendants breached that duty"; and the breach directly and proximately caused the Plaintiff damage. Am. Compl. ¶¶ 89–91. The Plaintiff's Response brief does not fill in many gaps, stating in relation to both claims that "the jury must decide whether it is reasonable to knowingly accuse another person of a crime they did not

commit." Resp. at 26, ECF No. 61. The Plaintiff has not demonstrated what duty the Security

Defendants owed him and how they breached that duty. The Plaintiff cites no caselaw in

defending either claim.

The Court has no means of deciding whether a claim and argument are fit for a jury's

consideration where it must assume the facts to be applied and the arguments against summary

judgment. "[P]erfunctory and undeveloped arguments, and arguments that are unsupported by

pertinent authority, are waived." *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir.

1991); *see also Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019) (underdeveloped and

unsupported arguments are waived) (citing *Schaefer v. Universal Scaffolding & Equip., LLC*,

839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are

arguments unsupported by legal authority.")); *see also Bretford Mfg., Inc. v. Smith Sys. Mfg.

Corp.*, 419 F.3d 576, 581 (7th Cir. 2005) ("it is not our job to do the legal research that [counsel]

has omitted."). Because the Plaintiff has not developed his NIED and negligence claims with

supporting facts or legal authority, the Court grants summary judgment in favor of the Security

Defendants as to those claims.

*7. Battery*

The record is bereft of evidence showing anyone other than Defendant Pinarski touched

the Plaintiff during the March 11, 2018 incident. The battery claim, then, is limited to this

touching, and the Court enters summary judgment on this claim in favor of Defendant Witt.

The Security Defendants argue Defendant Pinarski's pat search did not constitute a

battery because it was a touching pursuant to a reasonable search incident to the Plaintiff's arrest.

The viability of the Plaintiff's battery claim is therefore tied to his Fourth Amendment claim; if

his arrest was supported by probable cause and was therefore lawful, the touching did not

constitute a battery. *See City of S. Bend v. Fleming*, 397 N.E.2d 1075, 1077 (Ind. Ct. App. 1979) ("A police officer in the lawful discharge of his duties is privileged to use . . . force which is reasonable and necessary to effect an arrest.").

As explained above, whether the Plaintiff's arrest was supported by probable cause is a question for the jury. Because the Court cannot conclude as a matter of law that the Plaintiff's arrest was supported by probable cause, the Court declines to enter summary judgment in favor of Defendants Pinarski and AHPS on the Plaintiff's battery claim.

**B.      Franciscan Alliance's Motion for Summary Judgment**

In its summary judgment motion, Defendant Franciscan states "[e]ach claim raised by [the] Plaintiff is based upon the acts of Co-Defendant [AHPS]'s employees only." Franciscan's Mem. at 1, ECF No. 51. Defendant Franciscan argues it is entitled to summary judgment because it cannot be held liable for the acts of an independent contractor such as AHPS. The Plaintiff concedes that the Court should grant partial summary judgment on his claims because Defendant Franciscan cannot be held liable for the conduct of AHPS and its employees, but the Plaintiff disputes that his claims were only based on the acts of AHPS.

The Plaintiff responds that his Amended Complaint clearly stated his state law claims against every Defendant individually. To support this argument, the Plaintiff references the first three counts of his Amended Complaint: false arrest, malicious prosecution, and defamation per se, each of which states the "Defendants" acted to harm him. Am. Compl. ¶¶ 44–57. Defendant Franciscan argues that it cannot be held liable for actions its employees were not involved in:

> Franciscan's employees were not intimately involved in any of the alleged actions that give rise to any of the allegations contained in [the] Plaintiff's Complaint, and therefore, Franciscan cannot be held liable, directly, or otherwise, for any of the allegations generally directed at all Defendants in [the Plaintiff's] Complaint, as a matter of law.

Franciscan's Reply at 5, ECF No. 66. The Complaint does state in each count that

unspecified "Defendants" were responsible for each alleged harm. Am. Compl. ¶¶ 45–46, 48–51,

53–57, 59–62, 64–69, 71, 73–74, 77–80, 89–90.[14]

 "[W]here a plaintiff fails to raise a claim in his complaint, he waives that claim; the

plaintiff cannot raise a new claim in his response to a motion for summary judgment."

*Martin v. Indiana*, No. 1:12-CV-69-SLC, 2015 WL 4899008, at *19 (N.D. Ind. Aug. 17, 2015)

(citing *Anderson v. Donahoe*, 699 F.3d 989, 997–98 (7th Cir. 2012) (explaining that claims not

alleged in a plaintiff's complaint are waived and cannot be added in a response to the defendant's

motion for summary judgment because allowing a plaintiff to make new claims in a response to a

motion for summary judgment would allow amendment of the complaint without providing the

defendant the fair notice required by the federal pleading rules)). Similarly, a plaintiff cannot

"alter[] radically the factual basis of his complaint at summary judgment" as that too is

tantamount to raising new claims on summary judgment. *Whitaker v. Milwaukee Cnty.,*

*Wisconsin*, 772 F.3d 802, 808 (7th Cir. 2014) (citing *Shanahan v. City of Chicago*, 82 F.3d 776,

777 (7th Cir. 1996)). It is "factual allegations, not legal theories, that must be pleaded in a

complaint." *Id.* (citation omitted). Further, when the nonmovant raises new issues or arguments

in response to a summary judgment motion, the movant is entitled to respond to those new issues

in its reply brief. *Wolotka v. Town of Munster*, 399 F. Supp. 2d 885, 901 (N.D. Ind. 2005). The

Court, therefore, considers whether the Plaintiff raises new claims and arguments for the first

time in response to a summary judgment motion or whether the Amended Complaint clearly

---

[14] Count IX of the Plaintiff's Complaint states a claim for "Respondeat Superior Liability" and alleges that Defendants Witt and Pinarski were acting as employees and/or agents of Franciscan within the scope of their employment/agency. *Id.* ¶¶ 82–87. The Plaintiff has conceded summary judgment is warranted on this issue in response to Franciscan's motion for summary judgment. *See* Resp. at 3, 12–13 (describing Defendants Witt and Pinarski as employees of AHPS and conceding that Defendant Franciscan cannot be held liable for the acts of AHPS employees).

demonstrates that the Plaintiff brought these claims against Franciscan's employees and not just employees of AHPS, and, consequently, whether Defendant Franciscan failed to raise a known argument for summary judgment despite having sufficient notice.

1. *Claims Clearly Addressed in Briefing*

   a. *False Arrest*

The Amended Complaint briefly references Franciscan employees' involvement in the events leading to the Plaintiff's arrest by noting that, after Defendant Pinarski began questioning the Plaintiff on his reasons for being present at the SPD, "[w]ithin minutes, [the Plaintiff] was surrounded by several unknown security guards and/or hospital staff." Am. Compl. ¶¶ 25–27. This included Franciscan employee Thad Stutler. Franciscan Ex. D at 7.

The Court finds the Defendants had sufficient notice from the Complaint that hospital employees surrounded the Plaintiff during his arrest and that such claims give rise to a claim for false imprisonment, but not for false arrest.

The Plaintiff's Amended Complaint labels Count I as "False Arrest." Am. Compl. at 6. However, the Amended Complaint recites the standard for a claim of false imprisonment, not the standard for a false arrest.[15] A false imprisonment claim is necessarily implicated in a false arrest claim.[16] Indiana caselaw instructs that "[a] defendant may be liable for false arrest *when he or*

---

[15] "False imprisonment has been defined as an unlawful restraint upon one's freedom of locomotion or the deprivation of liberty of another without his consent." *Conn v. Paul Harris Stores, Inc.*, 439 N.E.2d 195, 198 (Ind. Ct. App. 1982) (citation omitted).

[16] "[A]n imprisonment can be made absent an arrest, … [and] 'a false arrest is one means of committing a false imprisonment.'" *Bentz v. City of Kendallville*, 577 F.3d 776, 780 (7th Cir. 2009) (quoting *Row v. Holt*, 834 N.E.2d 1074, 1088–89 (Ind. Ct. App. 2005)). While the Seventh Circuit in *Bentz* noted that Indiana Courts have used the terms "false arrest" and "false imprisonment" interchangeably when reviewing claims of unlawful detention by public authorities, *id.*, "a defendant may be liable for false arrest when he or she *arrests a plaintiff* in the absence of probable cause to do so." *Earles v. Perkins*, 788 N.E.2d 1260, 1265 (Ind. Ct. App. 2003) (citing *Miller v. City of Anderson*, 777 N.E.2d 1100, 1104 (Ind. Ct. App. 2002).

*she arrests a plaintiff* in the absence of probable cause to do so." *Earles v. Perkins*, 788 N.E.2d 1260, 1265 (Ind. Ct. App. 2003) (emphasis added).

Though the Plaintiff alleges Stutler may have restrained the Plaintiff's freedom of movement without the Plaintiff's consent, the Plaintiff does not dispute that Defendant Pinarski made the arrest and is the only person who touched the Plaintiff. Even on summary judgment, the Plaintiff does not explain how Stutler's conduct meets the particular standard for a false arrest claim. *Perkins*, 788 N.E.2d at 1265. Alleging a non-arresting, non-security guard, non-police officer private employee who merely stood in the background, asked questions, had no physical contact with the arrestee, and, crucially, made no arrest does not appear to fit within the traditional confines of false arrest.

The Court nonetheless permits the Plaintiff to proceed on this claim under a theory of false imprisonment, the legal standard the Plaintiff cited both in his Complaint and in his response. A complaint need not state legal theories, it need only contain a statement of the facts populating a claim. *BRC Rubber & Plastics, Inc. v. Cont'l Carbon Co.*, 900 F.3d 529, 541 (7th Cir. 2018). So long as the fundamental factual allegations remain the same, a plaintiff may change the legal theory demonstrating a particular set of facts gives rise to relief. *See id.* (quoting *Whitaker*, 772 F.3d at 807–09). The Court finds the facts supporting the Plaintiff's claim of false imprisonment—that a Franciscan employee surrounded the Plaintiff just before and during his arrest—were clearly stated in the Complaint.

The Defendant raised argument in opposition to this claim for the first time in its reply supporting summary judgment. The Court will not now consider arguments against this claim. *See Wolotka* 399 F. Supp. 2d at 901 ("arguments raised for the first time in a reply brief are waived."). "District courts abuse their discretion when they deny a party a chance to respond to

new arguments or facts raised for the first time in a reply brief in support of a motion for

summary judgment and subsequently enter judgment on the basis of those new arguments or

facts." *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 950 F.3d 959, 968–69 (7th

Cir. 2020) (citing *Dr. Robert L. Meinders, D.C., Ltd. v. UnitedHealthcare, Inc.*, 800 F.3d 853,

858 (7th Cir. 2015) ("the district court deprived [the plaintiff] due process by entering judgment

against him on law and facts to which he did not have a full and fair opportunity to respond")

and *Black v. TIC Inv. Corp.*, 900 F.2d 112, 116 (7th Cir. 1990)). The Court denies summary

judgment on the Plaintiff's false imprisonment claim against Franciscan.

   *b.  Malicious Prosecution*

   The Court finds that the Amended Complaint did not allege facts against Defendant

Franciscan regarding malicious prosecution and that the Plaintiff implicates Defendant

Franciscan in this claim for the first time in response to summary judgment. The Amended

Complaint contains no facts specifically describing the Plaintiff's malicious prosecution claim.

Rather, the Complaint describes the March 11, 2018 incident and its consequences: the

Defendants contacted the Plaintiff's employer and claimed he had been stealing medical

equipment and selling it illegally; the Plaintiff lost his job; the Plaintiff was charged with

criminal trespass and the charges were later dismissed without any finding as to the Plaintiff's

culpability; and a flyer containing the Plaintiff's mugshot was circulated among a number of

hospitals in the Northwest Indiana and Chicagoland area. Am. Compl. ¶¶ 18–42. The Amended

Complaint gave no specific indication that the Plaintiff intended to assert a claim against

Franciscan's employees. Rather, in outlining the allegation for Respondeat Superior Liability, the

Amended Complaint states, "Defendant Pinarski and Defendant Witt were employed and/or

acting as an agent of Defendant Franciscan at all relevant times. . . . Defendant Pinarski and

Defendant Witt were acting within the scope of their employment and/or agency with Defendant Franciscan at all times." *Id.* ¶¶ 82–83.

In its Response, the Plaintiff argues its malicious prosecution claim against Franciscan is based on the following evidence: Franciscan employees Kathi Weems and Sherry Gerdes contributed to the information underlying the AHPS investigation that ultimately led to the Plaintiff's arrest; AHPS employee Brooks testified that he relied on Gerdes in the AHPS investigation; and Gerdes met with investigating Dyer Police Detective Stein following the Plaintiff's arrest despite acknowledging "nothing had been stolen."

The Court finds these facts were not set out in the Complaint and the Plaintiff asserts them for the first time in response to summary judgment. The Plaintiff therefore impermissibly attempts to amend his Complaint and Defendant Franciscan may well have reasonably assumed any malicious prosecution claim was based on the actions of the Security Defendants.

Even on the merits, however, this claim cannot succeed.[17] The Plaintiff takes issue with the action of Franciscan employees Gerdes and Weems because they aided in the AHPS investigation concerning the Plaintiff's past hospital visits and his potential theft and because Gerdes met with a Dyer Police investigator following the Plaintiff's arrest. The information Gerdes and Weems provided to AHPS concerns their suspicions that he was stealing medical supplies and relates to the events preceding the March 11, 2018 incident, events that never themselves resulted in criminal charges. Gerdes and Weems did not refer these suspicions to the Dyer Police or any other department with the immediate power to charge the Plaintiff. Rather,

---

[17] In Indiana, a malicious prosecution claim has four elements: (1) a defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted with malice; (3) the action was unsupported by probable cause; and (4) the action was terminated in the plaintiff's favor. *City of New Haven v. Reichhart*, 748 N.E.2d 374, 378 (Ind. 2001).

they informed hospital security. The Plaintiff draws no causal connection between reporting suspicious but not clearly unlawful activity to AHPS and the filing of charges. *See Reichhart*, 748 N.E.2d at 378 (explaining that malicious prosecution requires a showing that the defendant instituted or caused to be instituted an action against the plaintiff).

 Neither does the Plaintiff explain how Gerdes' and Weems' reporting to AHPS or meeting with the Dyer Police following the Plaintiff's arrest is relevant to the charges the Plaintiff ultimately faced. Gerdes and Weems suspected the Plaintiff of theft. The Plaintiff was charged with criminal trespass based on the events occurring on March 11, 2023. The Plaintiff has never pleaded or otherwise argued he was charged for theft or any theft-related offense, even after Gerdes met with the Dyer Police investigator. The Plaintiff draws no causal connection between Gerdes' and Weems' aiding AHPS and the Dyer Police in an investigation premised on a potential theft arising from events prior to March 11, 2018, and the actual, non-theft, trespassing charges arising from the March 11, 2018 incident.

Because the Plaintiff has not properly brought this claim and because, even if he had, Defendant Franciscan would be entitled to judgment as a matter of law, the Court grants Defendant Franciscan's motion for summary judgment on the Plaintiff's malicious prosecution claim.

c.  *Defamation Per Se*

The Plaintiff asserts a defamation claim based on the Defendants' statements to police that he has not asserted in his Amended Complaint. In doing so, the Plaintiff impermissibly

attempts to amend his Amended Complaint in response to summary judgment. Additionally, both asserted bases of defamation lack merit, as a matter of law.

Indiana courts define defamation as a statement "which tends to injure reputation or to diminish esteem, respect, good will, or confidence in the plaintiff, or to excite derogatory feelings or opinions about the plaintiff." *Ali*, 53 N.E.3d at 428 (quotation marks and citation omitted). A claimant cannot recover for defamation unless the claimant shows the statement is both false and defamatory. *Id.*

"To establish a claim of defamation, a plaintiff must prove the existence of a communication with defamatory imputation, malice, publication, and damages." *Dugan*, 929 N.E.2d at 186 (quotation marks and citation omitted). "One type of defamation action, alleging defamation *per se*, arises when the language of a statement, without reference to extrinsic evidence, constitutes an imputation of (1) criminal conduct, (2) a loathsome disease, (3) misconduct in a person's trade, profession, office, or occupation, or (4) sexual misconduct." *Id.*

The Plaintiff contends that Franciscan employee Gerdes knowingly made false, defamatory statements by pointing to two pieces of evidence. First, the Plaintiff references when Gerdes told the Dyer Police the following:

> [Questioner:] What do you recall of what was in his car?
> [Gerdes:] I know we went to the police station to look at the pictures [of what was in his car], and I remember a big NovaSure box, which is really expensive, $750 at the time. And [the police interviewers] asked me if it was mine. And I said, you know what, I can't lie and say yes. It could have been mine, but I don't know if it was his. He could have been coming in our department once every few weeks and taking one.
>     And then what reps do a lot of times, some of the smaller surgery centers, they can't afford to have stock on their shelves. So they do what's called a bill only. And even at our hospital sometimes people would bring one in and say, oh, here, use mine. And then they give you a bill, and you pay them, and then you don't have the expense of having inventory on your shelf.
>     So he could have been swiping them from us, and then doing bill onlies at these little standalone surgery centers. I don't know. But with consumables, you

don't track the serial numbers on them, you know. So unless I had a lot number on the box and saw that I just had a shipment of lot number ABC, and the only ABCs shipped in the country were to me, and he had one in his trunk, then I would know it was mine. But just to say, ah-ha, I stock those at Hammond too. Hey, maybe he got that from the Hammond campus when he was there. I can't lie and say, yes, I know with certainty it was mine.

Pl. Ex. L, 58:17–59:21. The Plaintiff argues this statement was false and was defamatory because "Gerdes knew nothing had been stolen." Pl. Resp. at 14, ECF No. 64. To show Gerdes knew nothing had been stolen, the Plaintiff points to the AHPS Incident Report # 6004, created after the Plaintiff's February 11, 2018 visit to Franciscan's Hammond campus. Sec. Def.'s Ex. K. The Incident Report details Kathi Weems' report that a person she believed was suspicious visited the SPD, and that following the visit, Weems believed the suspicious person may have stolen something. *Id.* The Incident Report also reflects that Weems later reported that the missing instruments had been found, that Weems continued to believe the Plaintiff stole something, and that she would continue to search through inventory to see if anything was missing. *Id.*

Second, the Plaintiff argues Gerdes defamed him by reporting her suspicions to AHPS, citing the following evidence:

[Questioner:] Is it based on -- now I'm talking – I'm jumping around, but I'm talking on February 25, 2018, did American Heritage's suspicion of criminal activity by Mr. Garber, was that based on anything other than Kathi Weems' statement from February 11?
[Roger Brooks:] As of the 25th?
[Questioner:] Yes.
[Roger Brooks:] Again, that Sherry Gerdes was reporting that she did not believe that he was there on legitimate business needs, and she would be the one who I would think would know that or not. And then as of February 25th, we had this report from Baranowski where, again, an SPD employee reports what they described as suspicious behavior inside the SPD department.

Pl. Ex. D, 46:4–18.[18] Gerdes' reporting to the Dyer Police and AHPS that the Plaintiff was not in the hospital on legitimate business needs is too vague to implicate either professional or criminal misconduct. "In an action for defamation *per se*, the words used must have defamatory imputation on their face. *The circumstances in which the statements were made have no bearing on whether the statements constitute defamation per se*." *Wartell*, 47 N.E.3d at 385 (quoting *Big Wheel Rests., Inc. v. Bronstein*, 302 N.E.2d 876, 879 (Ind. Ct. App. 1973)). The Court grants summary judgment in favor of Defendant Franciscan on the Plaintiff's defamation per se claim.

### d. Respondeat Superior

The Plaintiff's Complaint includes a count for respondeat superior liability against all Defendants based on the conduct of Defendants Witt and Pinarski, stating they were acting as agents within the scope of their employment for both AHPS and Franciscan at all times. However, the Plaintiff concedes in his response that Franciscan is not liable for the actions of Defendants Witt and Pinarski. The Court, therefore, grants summary judgment on this claim in favor of Defendant Franciscan.

---

[18] This dialogue was provided by the Plaintiff in explaining the basis of his claim in his response to Defendant Franciscan's summary judgment motion; it appears to reference Gerdes' allegedly defamatory statement. The exact statement Gerdes either uttered or wrote is not clear. To the extent the Plaintiff takes issue with Weems' account in the AHPS Incident Report No. 6004 of her interaction with the Plaintiff on February 11, 2018, that account does not constitute defamation. "For a statement to be actionable [as defamation per se], it must be clear that it contains objectively verifiable fact regarding the plaintiff. If the speaker is merely expressing his subjective view, interpretation, or theory, then the statement is not actionable." *Wartell v. Lee*, 47 N.E.3d 381, 385 (Ind. Ct. App. 2015) (quoting *Meyer v. Beta Tau House Corp.*, 31 N.E.3d 501, 515 (Ind. Ct. App. 2015)). Aside from recounting the events of the Plaintiff's February 11, 2018 visit to the Franciscan campus in Hammond, the Incident Report No. 6004 includes Weems' interpretation of the events. Sec. Def.'s Ex. K. She does not state unequivocally that the Plaintiff stole anything that day. *Id.* Rather, she indicates his behavior left her suspicious that he may have taken something and that she had not yet found anything to be missing. *Id.*

2. *Claims Not Discussed in Briefing*

In its reply, the Defendant points out that, aside from claiming Franciscan waived its arguments for summary judgment as to the false arrest, malicious prosecution, and defamation per se claims, the Plaintiff does not address whether he intended for the remaining claims in the Complaint—battery, § 1983, NIED, IIED, wrongful interference with a business relationship, and negligence—to apply against Defendant Franciscan based on the actions of its own employees. The Court examines whether the claims could reasonably be read to do so.

The Plaintiff has freely conceded that AHPS is an independent contractor and that Franciscan is not liable for any misdeeds of AHPS or its employees. Any remaining claims factually based only on the conduct of AHPS or its employees, therefore, do not state claims for direct liability against Franciscan.

The Plaintiff's battery claim does not present a basis for direct liability against Defendant Franciscan. The Amended Complaint does not contain any allegation that anyone other than Defendant Pinarski touched the Plaintiff during these events. The Plaintiff has not stated in his account of the events or referenced any evidence that anyone else touched the Plaintiff.

Neither does the Plaintiff's Amended Complaint state a § 1983 claim directly against Defendant Franciscan. The Defendant Pinarski's arrest is the only conduct that the Amended Complaint alleges violated § 1983.

The Plaintiff's NIED, IIED, wrongful interference with a business relationship, and negligence claims may have been directed against Defendant Franciscan, but the facts now show that Defendant Franciscan's employees were not involved. There are only two factual bases alleged in the Complaint: the Security Defendants' actions; and the allegation that "Defendants

contacted [the Plaintiff's] employer (Hologic) and claimed that [the Plaintiff] had been stealing Depuy [sic] medical equipment from the hospital and selling it on 'the black market.'"

The Complaint does not detail which of the Defendants contacted Hologic, his former employer. However, in responding to summary judgment, the Plaintiff has provided evidence specifying AHPS employee Roger Brooks as the person who communicated via email with Hologic. Consequently, the only evidence of a communication to the Plaintiff's former employer is attributable to AHPS.

Because AHPS or AHPS employee conduct is the only factual basis supporting each of the remaining battery, § 1983, NIED, IIED, wrongful interference with a business relationship, and negligence claims, and because the Plaintiff has conceded summary judgment in favor of Franciscan is warranted on any allegations based on the conduct of AHPS and its employees, the Court grants summary judgment in favor of Franciscan on these claims.

## CONCLUSION

For the reasons set forth above, the Court hereby GRANTS in part and DENIES in part Defendants Anthony Pinarski, Christopher Witt, and American Heritage Protective Services, Inc.'s Motion for Summary Judgment [ECF No. 54]. Summary judgment as to the following claims against the Security Defendants is GRANTED:

- negligent infliction of emotional distress (Count IV) against Defendants Pinarski, Witt, and American Heritage Protective Services;
- intentional infliction of emotional distress (Count VI) against Defendant Witt;
- battery (Count VII) against Defendant Witt;
- wrongful interference with a business relationship (Count VIII) against Defendants Pinarski, Witt, and American Heritage Protective Services; and
- negligence (Count X) against Defendants Pinarski, Witt, and American Heritage Protective Services.

The Court also GRANTS in part and DENIES in part Defendant Franciscan Alliance Inc. d/b/a Franciscan Health Dyer's Motion for Summary Judgment [ECF No. 50]. The Court grants

the motion as to Counts II–X. Count I, the claim premised on false imprisonment, remains

pending against Defendant Franciscan.

     SO ORDERED on August 23, 2023.

<div style="margin-left:40%">

s/ Theresa L. Springmann     
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

</div>